**LOUISVILLE SHOPPING CENTER, INC., et al., Appellants,**

v.

**CITY OF ST. MATTHEWS, et al., Appellees.**

Supreme Court of Kentucky.

July 6, 1982.

Robert L. Sloss, Sheryl G. Snyder, Janet G. Marcum, Louisville, for appellants, Louisville Shopping Center, Inc., Greenland Vistas, Inc., and Herman Gellings.

Kent McElwain, T. Kennedy Helm, III, Philip W. Collier, Louisville, for appellants, Bluegrass Manor, Inc. and F. W. Woolworth Company, et al.

Foster L. Haunz, Louisville, for appellees, City of St. Matthews and Bernard Bowling.

Kyle Hubbard, Louisville, for appellees, Fiscal Court of Jefferson County, Ky., and Jefferson County Bd. of Elections.

Ewen, MacKenzie & Peden, Louisville, for appellees, Shelton B. Arterburn, Alice M. Arterburn and Bernard Arterburn, Trustee.

STEPHENS, Justice.

In these consolidated appeals, we consider the constitutionality of portions of the new Kentucky annexation statute (KRS Chapter 81A [1980]) and we interpret certain of its provisions.

This litigation arose out of the most recent efforts of the City of St. Matthews to annex a commercially developed parcel

of land which includes two shopping centers, several office buildings and one apartment complex.

When St. Matthews commenced the present litigation in 1977, the annexation procedure was set out in KRS 81.210 and 81.220.[1] Pursuant to those statutes the city enacted an ordinance proposing the annexation. More than 50% of the resident owners remonstrated. From the inception of the litigation until late in 1980 a great deal of proof was taken by the parties. The remonstrants filed a motion for summary judgment, indicating that there was no material issue of fact and that the proposed annexation would not benefit the property owners. They further argued that the burden of increased taxes[2] coupled with the lack of new or improved services constituted a deprivation of property without due process of law. The motion was denied on October 17, 1979, and the case was set for trial on July 21, 1980.

On July 15, 1980, six days prior to the scheduled trial date, House Bill 20[3] became effective. This legislative enactment, among other things, repealed those sections of KRS Chapter 81 under which the St. Matthews annexation petition and the resulting remonstrances were filed. Under the new statute,[4] protestors have 60 days to file a petition for an election on the proposed annexation. If 50% of the resident voters or owners of real property sign the petition a referendum is to be held at the next election. Under the referendum procedure the target property becomes annexed unless 75% of the "qualified voters" in the area vote against annexation. The new referendum procedure is expressly made applicable to every case pending at the time the statute was enacted.[5]

The trial court removed the pending case from its docket and held that it had been deprived of jurisdiction by reason of the retrospective provisions of the statute. The appellants here, owners of much of the real estate in the annexed area, then filed a petition with the Jefferson County Court Clerk under the new statute, and an election was held in November 1980.

The City of St. Matthews took the position that it had prevailed in that election and proceeded to enact an ordinance which purported to complete the annexation of the area. The appellants filed for a declaration of rights seeking to have the election and the ordinance declared null and void. This action was consolidated with the pending annexation case. Additionally, an election contest was filed and was joined with the other two cases.

The trial court's main rulings were:

1) That the 1980 statute could be retroactively applied to pending annexation cases.

2) That the "qualified voters" referred to in KRS 81A.420(2)(b) and (c) means registered voters.

3) That the statutory requirement of 75% of the votes necessary to defeat the annexation ordinance does not violate the constitutional requirement of an equal vote under Section 6 of the Kentucky Constitution, and

4) That the proposed annexation was not a taking of property without due process of law.

Following the perfecting of an appeal, we transferred the case to this court.

---

1. Those statutes provided that following the adoption and publication of an ordinance proposing annexation, the city was required to file a petition in the circuit court requesting a judgment permitting annexation. Any resident voter could contest the annexation. The issues were whether the annexation would be for the "interest of the city" and whether the annexation would "cause material injury" to the property owners. The burden of proof was upon the remonstrants if less than 50% of the resident voters joined in the lawsuit, but the burden shifted to the city if more than 50% resisted.

2. These would comprise a minimum of $100,000 per annum.

3. Now codified as KRS Chapter 81A.

4. KRS 81A.420 (1980)

5. KRS 81A.480 (1980)

DOES THE RETROSPECTIVE APPLICATION OF THE STATUTE TO PENDING ANNEXATION LITIGATION IMPAIR THE VESTED RIGHTS OF THE PARTIES OR VIOLATE THE DOCTRINE OF SEPARATION OF POWERS?

The Kentucky General Assembly's latest pronouncement in the continuing development of annexation measures became effective on July 15, 1980. It requires that its provisions shall apply retrospectively. KRS 81A.480 is as follows:

"The provisions of KRS 81A.050 to 81A.070 and KRS 81A.400 to 81A.470 shall apply in any annexation proceeding in which the annexing city has not adopted a final annexation ordinance by July 15, 1980."

This particular effort to annex the subject property began in 1977. The initial ordinance had been passed, the *ex parte* petition seeking judicial approval had been filed, a remonstrance petition had been filed, a considerable amount of proof had been taken and a trial had been scheduled to begin just six days after the effective date of the new statute. Because of the precise and mandatory working of KRS 81A.480, the trial court ceased all action.

Appellants argue that their right to present certain defenses to the proposed annexation under the old statutory procedure had become vested and could not be eliminated by legislative action. It is argued that since certain defenses to the annexation were pending adjudication, the legislative abolition of the right to present those defenses in court constitutes an invasion, by the legislature, of the exclusive prerogative of the judiciary over judicial matters. We do not agree.

It is clear that a legislative body may not arbitrarily, or without due process, by retroactive legislation terminate or impair the judicial rights of a litigant. *Thweatt v. Bank of Hopkinsville*, 81 Ky. 1 (1883). 16A Am.Jur.2d Constitutional Law § 669. Such rights are described and viewed as vested. *Leiserson & Adler, Inc. v. Keam*, Ky., 266 S.W.2d 352 (1954).

However, a party has no constitutional right to resist annexation. Annexation is purely and simply a political act within the exclusive control of the legislature. *City of St. Matthews v. City of Beechwood Village*, Ky., 373 S.W.2d 427 (1963). The legislature has the right to pass such laws for the annexation of territory to municipal corporations as in its judgment will best achieve the desired end. *Yount v. City of Frankfort*, Ky., 255 S.W.2d 632 (1953).

The rights of the appellants-remonstrants were therefore dependant on the legislature. The right to present defenses to annexation is a statutory privilege. The state may change or take away rights which were created by it, although it may not take away property which has vested by virtue of such rights. A right, in order to be vested (in the constitutional sense) must be more than a mere expectation of future benefits or an interest founded upon an anticipated continuance of existing general laws. 16A Am.Jur.2d Constitutional Law § 669, *supra*. We conclude therefore, that the right of appellants as remonstrants under the old statute were not vested rights, but were simply a legislative privilege.

Since we have re-affirmed the rule that annexation and all its ancillary procedures are creatures of the legislature and since no final judgment of a court was entered, we believe that appellants' argument concerning legislative interference with judicial matters fails. The statute is not unconstitutional on that ground.

DID A MINIMUM OF SEVENTY-FIVE PERCENT OF THE QUALIFIED VOTERS IN THE ANNEXATION AREA VOTE AGAINST THE PROPOSED ANNEXATION?

Following the filing of a petition with the Jefferson County Court Clerk, the required election was held at the November, 1980, general election. The question on the ballot was: "Are you in favor of annexing to the City of St. Matthews?"

KRS 81A.420(2)(c) provides that if 75% or more of the "qualified voters in the area to be annexed" oppose annexation, the annexation fails. The statute does not define "qualified voters."

There were, on election day, a total of 450 registered voters in the proposed annexation area. Of these, 23 persons had moved prior to election day, November 4, 1980. Thirteen of these 23 voted. Eight of the 23 moved prior to October 6, 1980. A total of 361 persons voted on the annexation question; 323 voted "no" and 38 voted "yes." Eighty-nine and one/half (89.5%) percent of those persons who *voted* cast their ballots against annexation. Thus 71.8% of the *registered voters* cast their ballots against annexation. St. Matthews contends, and the trial court agreed, that the phrase "qualified voters," not being defined, means registered voters, and that therefore the requisite minimum of a 75% negative vote was not met, and the annexation ordinance was not defeated. We agree.

Appellants argue that the 23 voters who did not reside in the precinct on election day are not "qualified voters." Assuming for the sake of appellants' argument only that none of those 23 were among the 323 "no votes", and reducing the number of registered (qualified) voters from 450 to 427, the number of "no" votes would be 75.6%, thus defeating the ordinance.

Whether the 23 registered voters who moved were, in effect, "non-resident" voters, is not spoken to in the annexation statute. KRS 116.025 deals with general voter eligibility. Section 1 provides that a registered voter who is not disqualified under Section 145 of the Kentucky Constitution[6] or who is not disqualified "under any other statute" may vote for all offices and *"on all public questions submitted for determination at that election in the precinct in which*

*he is qualified to vote."* Section 3 provides that a registered voter who moves less than 30 days before an election and is not permitted to register at his new residence "may vote at his former residence."

Appellants argue that the term "qualified voters" in KRS 81A.420(2)(b), (c) means resident voters, and that non-residents are disqualified under KRS 116.025(1) because they have no interest in the annexation election. This interpretation is strained, to say the least, and reads something into the plain wording of the statute that is not there. KRS 81A.420(2)(b), (c) does not define what constitutes a "qualified voter" in any respect. It cannot be used to disenfranchise a voter who is eligible under the terms of the general voter eligibility statute. The phrase "qualified voter," standing by itself, in the context of the annexation statutes, cannot be elevated to a "disqualification under any other statute" as provided in KRS 116.025(1). All registered voters who live in the precinct on election day or all those who have moved out within 30 days prior to the election are eligible to vote on all "public questions."

If we assume that the eight voters who moved from the precinct prior to October 4, 1980, are not "qualified" in view of KRS 116.025(3), and if we reduce the number of "qualified" (registered) voters to 442, the percent of anti-annexation votes is 73% which still falls short of the minimum negative vote required to defeat the annexation ordinance.[7]

■ Appellants also argue that the 75% minimum negative vote must be determined by using the total number of people who actually voted in the election. Under this analysis, as noted above, nearly 90% of the voters expressed an anti-annexation sentiment. The cases cited by appellants in support of this proposition[8] do, indeed, stand

---

6. Those persons who have been convicted of treason, felony, bribery in an election, who are confined for a penal offense, or are idiots or are insane persons, are disqualified by this provision.

7. This interpretation comports with an interpretation placed on the statute by an informa-tional bulletin issued by the Kentucky Legislative Research Commission. See, Informational Bulletin No. 138, *The New Municipal Law* (Jan. 1981).

8. *Montgomery County Fiscal Court v. Trimble*, 104 Ky. 629, 47 S.W. 773 (1898); *Board Sup'rs Carroll Co. v. Smith*, 111 U.S. 556, 4 S.Ct. 539,

for the principle that all qualified voters who absent themselves from an election are presumed to assent to the expressed will of the majority of those voting. The premise of these cases, all which have a similar holding, is the non-existence of any legislative expression to the contrary. If a statute provides otherwise, that statute prevails. Under the clear wording of KRS 81A.420(2)(b), (c) the 75% is to be determined by the number of "qualified voters," which is, as we have said, those who are registered and eligible under KRS 116.-025(1).

■ Therefore the percent of "no" votes (anti-annexation) was 71.7%, and we hold that it did not meet the requirement of KRS 81A.420(2)(c) to defeat the annexation ordinance of the city of St. Matthews.

## IS THE ANNEXATION OF THE AREA BY ST. MATTHEWS AN UNCONSTITUTIONAL TAKING OF THE APPELLANTS' PROPERTY IN VIOLATION OF DUE PROCESS OF LAW?

■ The basis of appellants' argument is that the residents of the annexed area would, as a result of the annexation, be subject to a greatly increased tax burden and would receive "no improved services" for these taxes.

An analysis of the evidence shows that the area, in its present unincorporated state, already enjoys most of the so-called urban services, and that these services are, in some instances, obtained from various county, private and volunteer agencies rather than the city. However, the city does provide many of the basic services, such as street maintenance, street lights, fire hydrants, traffic signals, storm sewers, and others. It is also clear that the proposed annexed area and its residents already enjoy direct and indirect benefits and services from the city.

Appellants rely on the case of *Chesapeake & O. Ry. Co. v. City of Silver Grove,* Ky., 249 S.W.2d 520 (1952), to sustain its argument. That case involved the original incorporation of the city and the attempt to

28 L.Ed. 517 (1884); *County of Cass v. John-*

include in the corporate limits an extensive railroad yard owned by the C & O. The railroad would have received *no* benefits or services from the proposed incorporation of the city. In *Jobe v. City of Erlanger,* Ky., 383 S.W.2d 675 (1964), we limited the holding of the *Silver Grove* case to its facts and pointed out that the tracts of land in the railroad yard were incapable of municipal use.

The existing enjoyment of services provided by St. Matthews to appellants (although limited), and the potential for additional benefits to the residents and property owners shown by the proof operate to distinguish the present case from *Silver Grove.* The limits of a municipal corporation cannot be extended solely for the purposes of increasing the revenues of the city, except when the residents of urbanized areas which abut a municipality are using the municipal services of that city. The fact of additional taxes alone is no reason why unincorporated land should not be annexed when it will receive benefits such as police protection, decreased fire insurance rates, etc. Under these circumstances, due process of law is not denied to residents and property owners in the area to be annexed. 2 McQuillin Municipal Corporations see s7.23a (3rd rev. ed, 1979).

We therefore conclude that the proposed annexation does not constitute a taking of property without due process of law.

## DOES KRS 81A.420(2)(b), (c) VIOLATE SECTION 2 OF THE KENTUCKY CONSTITUTION?

■ Appellants argue that KRS 81A.420(2)(b), (c) violates Section 2 of the Kentucky Constitution, which is as follows: "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

In responding to this argument of appellants, it must be remembered that annexation and all its procedures are not constitutional rights, but are political creatures of the legislature. *City of Beechwood, supra.*

ston, 95 U.S. 360, 24 L.Ed. 416 (1877).

The statute in question does not grant power over the "liberty and property" of citizens. It simply enables a minimum of 75% of the voters in the affected area to nullify the actions of a city legislative body through the process of referendum. The present statute, through the use of a vote, makes it a great deal easier for the affected citizen to stop annexation than did its predecessors.

Section 2 of our Constitution was intended to protect citizens against actions which are essentially unjust, unequal and in excess of the legitimate interest of the people. *Sanitation Dist. No. 1 v. City of Louisville,* 308 Ky. 368, 213 S.W.2d 995 (1948). As we view the questioned statute, it enhances the rights of the people to overcome a decision which they view to be inimical to their interests. The statute clearly is not a violation of Section 2.

The judgment of the trial court is affirmed.

All concur.