**CURTIS GREEN & CLAY GREEN, INC.; Paul Miller Ford, Inc.; G.F. Vaughan Tobacco Co., Inc.; Buckram Oak Holdings, N.V.; Hill 'N' Dale Kentucky, Inc.; Southeast Properties, Inc.; Peninsula Farm, Inc.; Denali Stud, Inc.; Groves Horse Services, LLC; Andrade Farm, Inc.; Eastern Kentucky Pipeline, Inc.; Valley Pipelines, Inc.; Grayco Rentals, Inc.; and Glenn Buick–GMC Trucks, Inc., Appellants,**

v.

**Sharon P. CLARK, in her capacity as executive director of the Kentucky Office of Insurance and Rehabilitator of AIK Comp; and other interested parties as listed on the Notice of Appeals, Appellees.**

No. 2006–CA–000086–MR.

Court of Appeals of Kentucky.

May 21, 2010.

---

Walter L. Sales, Justin D. Clark, Louisville, KY, Paul C. Harnice, Frankfort, KY, for appellee, Sharon P: Clark, in her capacity as Executive Director of the Kentucky Office of Insurance and Rehabilitator of AIK Comp.

Charles G. Middleton, III, Charles D. Greenwell, Louisville, KY, for appellee, AIK Comp Trustees.

Greg E. Mitchell, Jan de Beer, Lexington, KY, for appellee, Certain Group Members.

Before KELLER, LAMBERT, and STUMBO, Judges.

## OPINION

STUMBO, Judge.

This appeal concerns the intersect between workers' compensation coverage and insurance regulation. A group of 3,800 employers banded together to create a workers' compensation self-insurance group called AIK Comp, as permitted by 803 Kentucky Administrative Regulations (KAR) 25:026, Section 3.[1] The regulation permits a group of employers to pool their workers' compensation risk. Under the plan, the employers agree to become jointly and severally liable for any claims raised against the group. Due to alleged mismanagement by the AIK Comp trustees, the group began losing money. The group was having difficulty covering the actual and expected future workers' compensation risks.

On August 5, 2004, AIK Comp was placed into rehabilitation by the Franklin Circuit Court. Kentucky Revised Statutes (KRS) 304.33. The AIK trustees agreed to the rehabilitation action. Two days prior to the filing of the petition for rehabilitation, Governor Ernie Fletcher entered

Carroll M. Redford, III, Lexington, KY, for appellants.

---

1. The administrative regulation, 803 KAR 25:026, has been withdrawn pursuant to Senate Bill 86 discussed herein. This regulation is still applicable to the underlying case.

an Executive Order which purported to transfer authority over group self-insurers to the Office of Insurance, thereby allowing the Insurance Code to be utilized. Rehabilitation is a remedy based on the Insurance Code that the courts can impose to resurrect a failing insurance company.

The Rehabilitator appointed by the Franklin Circuit Court began making plans to assess members to cover the group's shortfall of approximately $58.5 million. Each group member would be assessed its proportional share and be forced to pay by court order.

Certain group members challenged the action contending that AIK Comp was not covered under the insurance statutes which permitted a rehabilitator to intervene in an insurance company's operation. This group was granted the status of intervening parties in the litigation. In 2005, after the action for rehabilitation had been filed, the Senate passed Senate Bill 86 as emergency legislation, thereby ratifying Governor Fletcher's Executive Order, transferring the regulation of group self-insurers to the Office of Insurance and specifically defining these self-insured groups as insurers. The parties agree that the effect of S.B. 86 is to now, unquestionably, subject group self-insurers to the provisions of the Insurance Code.

S.B. 86 also contained a provision designating it as retroactive to August 4, 2004, the day the original petition for rehabilitation of AIK was filed. On March 7, 2005, shortly after S.B. 86 was enacted, the Rehabilitator filed a motion to file an amended petition for rehabilitation, citing S.B. 86 as authority for proceeding under the Insurance Code. The trial court granted the motion without objection from the intervening parties and the petition was deemed filed on that day. Appellants emphasize that this was simply an amended petition, not served on the individual members of the self-insured pool, and contend that the amendment of the petition is insufficient to give the trial court jurisdiction over the various members of AIK. The Appellants also challenge the constitutionality of S.B. 86 as prohibited retroactive legislation and as special legislation affecting only AIK Comp.

In addition to the jurisdictional and constitutional issues (whether the court had jurisdiction prior to the enactment of S.B. 86, whether the bill is constitutional and whether an amended complaint, rather than a new complaint, is sufficient to grant the court jurisdiction) Appellants challenge the summary judgment granted by the circuit court declaring that the members of AIK Comp are jointly and severally liable for all claims against the fund (as opposed to those of only their own employees) and wish to prohibit any assessment of further contributions in order to stabilize the finances of the group.

Additionally, Appellants also argue that the joint and several liability provisions in the Application for Membership for AIK Comp and Indemnity Agreement are unenforceable for reasons that will be detailed later in this opinion.

## JURISDICTION

The primary argument in regard to the jurisdictional issue involves whether the enactment of S.B. 86 impaired vested rights and defenses available to Appellants and whether it constitutes special legislation prohibited by the Kentucky Constitution because Appellants are the only entity affected by the governor's ratified Executive Order and by the retroactive application of the statute. We will address the latter argument first.

Section 59 (29) of the Kentucky Constitution states that: "[t]he General Assembly shall not pass local or special

acts concerning any of the following subjects, or for any of the following purposes ... [i]n all other cases where a general law can be made applicable, no special law shall be enacted." Special legislation is that which favors a special interest to the detriment of the rest of society; it is not legislation which is merely designed to further a specific purpose. *Yeoman v. Commonwealth, Health Policy Board,* 983 S.W.2d 459 (Ky.1998). If the effect of the legislation is uniform upon the class to which it applies, it is not invalid special legislation. As our Supreme Court noted, "[a]ll acts must deal with a special subject.... We are not impressed with the argument that the legislature cannot deal with one particular item separately because of the fact that it has dealt with a general subject." *Ky. Milk Marketing and Anti–Monopoly Comm'n v. Borden Co.,* 456 S.W.2d 831, 835 (Ky.1969).

 A classification renders a statute a special law where a general law can be made applicable within the meaning of the constitution, where it is made to depend, not on any real, natural or substantial distinction, but on artificial, arbitrary, illusory or fictitious conditions so as to make the classification unreasonable or unjust. *Reid v. Robertson,* 304 Ky. 509, 200 S.W.2d 900 (Ky.1947). If the classification rests upon a distinctive and natural reason rather than an arbitrary one, it is a valid law and is general in the constitutional sense. *Allison v. Borders,* 299 Ky. 806, 187 S.W.2d 728 (Ky.1945). An example of the application of this rule is found in *Winston v. Stone,* 102 Ky. 423, 43 S.W. 397 (Ky. App.1897), wherein the court held that a statute which applies in general terms to all counties that have a population in excess of a certain number is not special legislation in violation of the Kentucky Constitution because only one county falls into that category. In *Schoo v. Rose,* 270

S.W.2d 940, 941 (Ky.1954), our Supreme Court reaffirmed this principal stating that to satisfy Section 59, "(1) [the legislation] must apply to all in a class, and (2) there must be distinctive and natural reasons inducing and supporting the classification." We believe that S.B. 86 passed the test and is therefore constitutional.

As stated in the introduction to S.B. 86, it was intended "to establish minimum financial standards for workers' compensation self-insured groups to ensure that self-insured groups are providing adequate coverage for member employers' risks and liabilities under KRS Chapter 342 for injured employees of the member employers." KRS 304.50–005. We believe that this language clearly defines the class as required by *Schoo* and provides that it is applicable to all members of the class. The second *Schoo* requirement, that there be distinctive and natural reasons supporting the classification, is met by the nature of self-insured groups, the similarity of such groups and the legitimate legislative interest in regulating the risks and liabilities of injured employees and their members. We therefore hold that S.B. 86 does pass constitutional muster and meets the requirements to avoid the designation of special legislation.

 We next consider Appellants' argument that because only one entity (AIK Comp) was impacted by the retroactive part of S.B. 86, it is special legislation. While there is little caselaw on this point, we note that in the past, our Supreme Court held that a statute permitting the collection of retroactive taxes by a newly formed city of the first class was not unconstitutional just because there was only one city to which it applied. The court noted that the statute would apply equally to other cities, if there were any other first class cities. In the case at bar, there is no indication that S.B. 86 would apply only to

AIK if there were other workers' compensation self-insured groups. Further, we believe that the retroactive effect of S.B. 86 is consistent with its purpose as a remedial statute.

Our Supreme Court has cited with approval the following language in regard to remedial legislation:

> Legislation which has been regarded as remedial in its nature includes statutes which abridge superfluities of former laws, remedying defects therein, or mischiefs thereof, whether the previous difficulties were statutory or a part of the common law. Remedial legislation implies an intention to reform or extend existing rights, and has for its purpose the promotion of justice and the advancement of public welfare and of important and beneficial public objects. The term applies to a statute giving a party a remedy where he had none, or a different one, before. Another common use of the term "remedial statute" is to distinguish it from a statute conferring a substantive right.

*Kentucky Ins. Guaranty Ass'n v. Jeffers ex rel. Jeffers*, 13 S.W.3d 606, 610 (Ky.2000)(citing 73 Am.Jur.2d *Statutes* § 11 (1974)).

■ When determining whether S.B. 86 is remedial, we look to the Legislature's reason for enacting the legislation in the first place. As we noted before, the purpose of the legislation was to provide a tool by which both the right to compensation for the injured worker was assured along with the right of the insured employer to the coverage for which it had paid. Given that self-insured groups like AIK Comp were not subject to regulation under the Insurance Code before the legislation, enactment of S.B. 86 rectified a defect in the previous law and extended the right of the state and the insured to seek protection of the Insurance Code, thereby protecting the injured worker's benefits. Surely this extension of the Insurance Code promotes "the advancement of public welfare and of important and beneficial public objects." *Kentucky Ins. Guaranty Ass'n, supra.* We, therefore, find that the application of S.B. 86 is not unconstitutional, special, or retroactive legislation.

■ Appellants also argue that in applying S.B. 86, their vested right to be governed by the Workers' Compensation law rather than the Insurance Code has been violated. We disagree. We need only point to the fact that workers' compensation is a "creature of statute," dependent on the legislature for its continuing existence. *See, e.g., Williams v. Eastern Coal Corp.*, 952 S.W.2d 696 (Ky.1997). The definition of a vested right is found in *Louisville Shopping Center, Inc. v. City of St. Matthews*, 635 S.W.2d 307, 310 (Ky.1982), wherein the Supreme Court said: "[a] right, in order to be vested (in the constitutional sense) must be more than a mere expectation of future benefits or an interest founded upon an anticipated continuance of existing general laws." In that case, the court held that application of a legislative change that occurred six days before a trial was to occur, after substantial litigation had already taken place, did not impair the vested rights of the parties, even though the new enactment repealed the provision upon which the litigation rested. "[T]he state may change or take away rights which were created by it[.]" *Id.* There has been no constitutional violation.

■ The next jurisdictional argument is that the Franklin Circuit Court had no jurisdiction over the rehabilitation petition when it was originally filed because self-insured workers' compensation groups were not covered by the Insurance Code and that the filing of the amended

petition was ineffective in endowing the court with jurisdiction. The federal courts have held that the filing of an amended complaint is the equivalent of filing a new lawsuit and those issues of subject matter jurisdiction must be resolved by examining the amended complaint. *Morlan v. Universal Guaranty Life Insurance Co.*, 298 F.3d 609, 617 (7th Cir.2002); *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928–29 (8th Cir. 2005). Our CR [2] 15 is identical to its federal counterpart, Fed.R.Civ.P. 15,[3] except for the manner in which they are numbered. *Schwindel v. Meade County*, 113 S.W.3d 159, 169 (Ky.2003). It is well established that Kentucky courts rely upon Federal caselaw when interpreting a Kentucky rule of procedure that is similar to its federal counterpart. *See, e.g., Newsome By and Through Newsome v. Lowe*, 699 S.W.2d 748 (Ky.App.1985). We see no reason not to apply this reasoning to the instant case and therefore hold that the Franklin Circuit Court had jurisdiction over the rehabilitation.

 Finally, Appellants claim that their due process rights were violated because neither the petition seeking rehabilitation nor a summons was served on the individual members of AIK Comp. A rehabilitation proceeding is a special statutory proceeding under the Insurance Code which provides for more flexible procedural rules and permits the court to fashion the rules in a way that the particular situation may demand. *Kentucky Central Life Ins. Co. v. Stephens*, 897 S.W.2d 583 (Ky.1995). As long as sufficient notice as to satisfy due process is given, all of the procedural niceties are not necessarily required. Once the Rehabilitator took over the group from the trustees, he began providing notice of all important events to the members through first-class mail, posting on the AIK Comp website, and publication through state-wide newspapers of all the hearings, rulings, and other court proceedings. If the rehabilitation was properly instituted pursuant to the Insurance Code, then the Rehabilitator's actions once he assumed the trustees' duties would be enough to put the members of the group on notice as to all relevant actions. Rehabilitation is not an adversarial process; it is designed to save the group from financial ruin and to protect the insured as best and as quickly as possible. The *Kentucky Central* case clearly provides that relaxed procedural rules are proper, and we believe that sufficient notice was given in this case.

## JOINT AND SEVERAL LIABILITY

 KRS 342.350(4) permitted employers to pool their liabilities to qualify as a self-insured group. The regulations that support the statute require that when a self-insured group is formed, there must be "an executed copy of the indemnity agreement by which group members jointly and severally bind themselves to pay their workers' compensation liability." 803 KAR 25:026, Section 3(2)(f). When AIK Comp was formed, an indemnity agreement was executed and Appellants do not deny signing an application for membership which adopts by reference the indemnity agreement entered into by the group trustees and requiring all members to be jointly and severally liable for all workers' compensation claims raised against the group. Appellants do claim, however, that this provision is not enforceable because the agreement was breached.

The indemnity agreement provided that "[t]he Trustees are authorized and direct-

---

**2.** Kentucky Rules of Civil Procedure.

**3.** Federal Rules of Civil Procedure, Rule 15.

ed to take all reasonable precaution to protect the members from losses and shall provide for excess insurance coverage designed to protect said members against excess losses." Appellants claim that the trustees did not obtain adequate aggregate excess insurance to protect the group. The trustees admit that they did not have *aggregate* excess insurance but state that they did have *specific* excess insurance. Aggregate excess insurance means "an insurance policy written on a claims incurred basis which insures claims to a stated limit in excess of a specified percentage of the earned premium." 803 KAR 25:026, Section 1(2). Specific excess insurance means "an insurance policy which insures the amount of a claim from one (1) occurrence involving one (1) or more employees or employers in the same occurrence or incident of exposure in excess of a specified dollar amount." 803 KAR 25:026, Section 1(16).

Appellants contend that because AIK Comp did not have aggregate excess insurance, it breached its agreement with its members and therefore cannot enforce the joint and several provisions. The Rehabilitators state that by procuring specific excess insurance, the trustees upheld their end of the agreement. The Indemnity Agreement merely states that the trustees are to procure excess insurance; it does not specify what kind. There are some statutory requirements a self-insured group must follow when it comes to excess insurance. Regulation 803 KAR 25:026, Section 7 states that a self-insurance group must acquire aggregate excess insurance *unless a waiver is obtained* from the Office of Workers' Claims. AIK Comp obtained such a waiver each year it was in existence. By obtaining the waiver for aggregate excess insurance, but still maintaining specific excess insurance, the trustees fulfilled both their statutory requirements and contractual obligations.

Therefore, there was no breach of the Indemnity Agreement which would allow Appellants to rescind the joint and several provisions.

In regard to these two arguments, we find that the Appellants remain jointly and severally liable under the Indemnity Agreement. For the reasons set forth herein, the judgment of the Franklin Circuit Court is hereby affirmed.

ALL CONCUR.