RENDERED: MAY 27, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0804-ME

SUMMIT MEDICAL GROUP, INC.                                    APPELLANT
D/B/A ST. ELIZABETH PHYSICIANS


                        APPEAL FROM KENTON CIRCUIT COURT
v.                      HONORABLE KATHLEEN S. LAPE, JUDGE
                        ACTION NO. 12-CI-02683


LISA COLEMAN                                                    APPELLEE


                                OPINION
                               REVERSING

                           ** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

JONES, JUDGE: The Appellant, Summit Medical Group, Inc. d/b/a St. Elizabeth

Physicians ("St. Elizabeth"), seeks interlocutory review of the Kenton Circuit

Court's July 6, 2021, order certifying a class action pursuant to CR[1] 23.01 and CR

---

[1] Kentucky Rules of Civil Procedure.

23.02(c), and appointing attorney Alan J. Statman as class counsel pursuant to CR 23.07.[2]  The Appellee, Lisa Coleman, is the named class representative.  St. Elizabeth argues the circuit court abused its discretion in concluding:  (1) that Coleman, the sole named class member, as represented by Attorney Statman, "will fairly and adequately protect the interests of the class"; and (2) that this action meets the superiority and predominance requirements of CR 23.02(c).  Having reviewed the record, we conclude the circuit court abused its discretion when it concluded that Coleman is adequate to serve as the named representative of this class.

## I. BACKGROUND

Dr. Shaun Jennings, who is employed by St. Elizabeth, was Lisa Coleman's primary-care physician during the relevant time period.  On June 26, 2012, Coleman was scheduled to see Dr. Jennings for her annual preventive care/wellness check (hereinafter referred to as the "Office Visit").  As part of the wellness check portion of her Office Visit, Coleman received a preventative exam, provided a urine sample, underwent an electrocardiogram (EKG) test, had her blood drawn, and received a Tdap vaccination.  During the examination, Coleman

---

[2] Pursuant to CR 23.03(1), "the court must determine by order whether to certify [an] action as a class action." *Jones v. Clark County*, 635 S.W.3d 54, 56 n.3 (Ky. 2021).  CR 23.06 allows an immediate, interlocutory appeal "of an order granting or denying class action certification . . . within 10 days after the order is entered."

brought up some additional concerns she had to Dr. Jennings, which included issues with menopausal tiredness, anxiety, depression, and her thyroid. Dr. Jennings addressed these additional concerns by reviewing Coleman's medications and her past treatment as documented in her chart. He diagnosed Coleman as suffering from anxiety and depression and wrote her a prescription for fluoxetine (Prozac). Dr. Jennings also prescribed Coleman medication for her thyroid.

On September 9, 2012, Coleman received a bill from St. Elizabeth for the Office Visit. Upon review, Coleman was surprised to see that St. Elizabeth had charged her two separate fees for the single visit: (1) a fee for the wellness examination and related services (labs, EKG, and vaccination), which was fully covered by Coleman's insurance; and (2) a separate office visit fee for the additional treatment she received for her depression/anxiety and thyroid, which Coleman's insurance only partially covered, leaving her with a balance of $104.69. After receiving notice from St. Elizabeth that failure to pay the bill could result in the account being referred to a collections agency, Coleman paid St. Elizabeth $54.69, leaving her with a $50.00 outstanding balance.

Prior to paying the balance of her bill, Coleman did some research on the internet which led her to believe that she had been wrongly billed by St. Elizabeth. Before paying the remainder of her bill, Coleman decided to seek the advice of legal counsel regarding whether she might have any recourse against St.

Elizabeth. She ultimately contacted the Deters Law Firm and met with then-licensed attorney Eric Deters.[3] With the assistance of Mr. Deters, Coleman filed a putative class action complaint against St. Elizabeth in Kenton Circuit Court on or about October 25, 2012, alleging that she was "double billed."[4]

The case was originally assigned to Kenton Circuit Court Judge Martin J. Sheehan. Coleman filed a first amended complaint in December 2012. In January 2013, St. Elizabeth filed a motion to deny class certification. This kicked off a brief flurry of activity in the case that lasted through August 2013, when Judge Sheehan recused from the case and entered an order certifying the need for the appointment of a special judge. For reasons that are not clear from the record, the case was not assigned to a new judge for over two years.

In October 2015, the case was finally reassigned to Kenton Circuit Court Judge Kathleen Lape, who continues to preside over the case. Even though there were several motions pending at the time the case was reassigned to Judge

---

[3] Mr. Deters has a tumultuous history of practicing law in this Commonwealth. On February 23, 2012, the Kentucky Supreme Court upheld the Bar Association Board of Governors' 61-day suspension of Mr. Deters's law license. *Kentucky Bar Ass'n v. Deters*, 360 S.W.3d 224 (Ky. 2012). On June 15, 2012, the Kentucky Supreme Court granted Deters's application for reinstatement, restoring his ability to practice law in the Commonwealth. *Deters v. Kentucky Bar Ass'n*, 408 S.W.3d 71 (Ky. 2012). Mr. Deters's license was again suspended in May of 2013. *Kentucky Bar Ass'n v. Deters*, 406 S.W.3d 812 (Ky. 2013). To date, Deters's law license has not been reinstated. *Deters v. Kentucky Bar Ass'n*, 627 S.W.3d 917 (Ky. 2021).

[4] Although 2012-2013 was punctuated with suspensions and reinstatements of Mr. Deters's law license, it appears that he was licensed when the complaint was filed in this action.

Lape, including St. Elizabeth's motion to dismiss the class claims, it does not appear that the pending motions were ever brought to Judge Lape's attention as part of the reassignment process or by way of motion by the parties, and sometime thereafter the file was apparently misplaced somewhere in the Clerk's Office.[5] As a result, the case lay dormant for another two years. At some point, the file resurfaced. On January 25, 2017, the circuit court issued a show cause notice for failure to prosecute pursuant to CR 77.02(2); at the time the circuit court issued its notice, there had not been any filings by the parties since May 29, 2013, a period lasting three years, seven months and twenty-seven days.

In February of 2017, Coleman, now represented by Stephanie L. Collins, a different attorney at Deters Law Firm, filed a terse, three-sentence objection to the circuit court's notice, stating: "There were pending Motions. The case was reassigned and the motions were not ruled upon. Plaintiffs [sic] object to the dismissal."[6] Still, the case continued to languish with no additional filings for another one year, five months and fifteen days. Then, on August 10, 2018, the

---

[5] Among others, the pending motions included: (1) St. Elizabeth's January 29, 2013, motion to deny class certification; (2) Coleman's motion to file a second amended complaint; and (3) St. Elizabeth's April 16, 2013, motion for summary judgment on all claims.

[6] As noted previously, Mr. Deters's license to practice law had remained in suspension since May of 2013, making him unable to continue representing Coleman.

circuit court entered an order allowing Coleman leave to file her second amended complaint,[7] certifying a class, and appointing Attorney Collins as class counsel.[8]

St. Elizabeth immediately appealed the circuit court's August 2018 certification order to this Court, Case Number 2018-CA-1238-ME. Around this same time, Attorney Collins left the Deters Law Firm, and Coleman's case was reassigned to another attorney at the firm, Frederick Johnson. Counsel Johnson represented Coleman throughout the first appeal, which culminated in this Court vacating the circuit court's August 2018 certification order and remanding for additional proceedings. While we found no error with respect to the circuit court's determinations as to numerosity, commonality, and typicality, we determined additional findings were necessary with respect to adequacy. Specifically, we held as follows:

> We agree with [St. Elizabeth] that the issue regarding appointment of counsel requires further analysis by the circuit court. "[The adequacy] prong necessarily requires an analysis of class counsel's ability to adequately protect the class's interests. 'It tests the qualifications of class counsel and the class representatives. It also aims

---

[7] Coleman's second amended complaint modified the substance of her allegations against St. Elizabeth. Instead of basing her claim against St. Elizabeth on its alleged practice of "double billing" its patients as alleged in the prior complaints, the second amended complaint asserted a claim pursuant to Kentucky Revised Statute ("KRS") 367.220(1), the Kentucky Consumer Protection Act ("KCPA"), predicated on St. Elizabeth's failure to notify its patients regarding its billing practices.

[8] This case is somewhat unusual in that the class certification issue was before the circuit court as part of a motion to dismiss the class claims. For reasons that are not clear from the record, Coleman never actually affirmatively moved for class certification.

to root out conflicts of interest within the class to ensure that all class members are fairly represented in the negotiations.'" *Nebraska Alliance*, 529 S.W.3d [307] at 315 [Ky. App. 2017] (citation omitted). Here there was no such analysis, and, even if there had been, the issue would need revisiting because of the proposed substitution of current counsel in place of [Attorney] Collins. "[W]e would be usurping the trial court's discretionary power if we were to make factual findings and legal conclusions[.]" *Id.*

"[B]ecause the typicality, commonality, and adequacy prongs overlap in analysis, the trial court should revisit all prongs on remand to determine whether to certify a class. *Cf.* CR 23.03(3) ('An order that grants or denies class certification may be altered or amended before final judgment.')." *Id.* (citation omitted). ***Therefore, we vacate the circuit court's appointment of counsel and remand the matter for full consideration under CR 23.01 and CR 23.07 ("Class counsel")***.

. . .

We decline to examine the circuit court's CR 23.02 findings until such time as the CR 23.01 issues are addressed on remand. *Nebraska Alliance*, 529 S.W.3d at 316 ("[I]f the trial court finds the CR 23.01 prerequisites are met, it must then examine whether one of the three requirements of CR 23.02(a)-(c) is met.").

*Summit Medical Group, Inc. v. Coleman*, 599 S.W.3d 445, 451 (Ky. App. 2019)

(emphasis added).

Following denial of Coleman's petition to reconsider and expiration

of the time to petition for discretionary review from the Kentucky Supreme Court,

this Court entered a designation of finality and returned the record to the Kenton

-7-

Circuit Court on or about June 23, 2020. Shortly thereafter, Attorney Johnson unexpectedly passed away, at which time Dominick Romeo, also an attorney at Deters Law Firm, took over the case with the assistance of another attorney at the firm, Alexander Pertaglia.[9] For the next several months the parties took additional discovery in preparation for the upcoming certification hearing, which the circuit court scheduled for November 5, 2020. The hearing, which lasted approximately two hours, was conducted in accordance with this Court's remand order directing the circuit court to reassess class certification under CR 23.01, and, if certified, for appointment of class counsel pursuant to CR 23.07.

Attorney Alan J. Statman was the first witness to testify. Attorney Statman is the managing member of Statman, Harris & Eyrich, LLC, a Cincinnati, Ohio law firm. He seeks to be appointed class counsel. The first portion of Attorney Statman's testimony focused on his professional qualifications. Attorney Statman graduated from the University of Dayton School of Law in 1983, and is currently licensed to practice law in Ohio, Kentucky, and Illinois. He has tried numerous cases to verdict, securing millions of dollars on behalf of his clients. He has substantial experience in class actions and other types of complex litigation, specializing in cases involving banking, finance, consumer rights, and mass torts.

---

[9] On August 27, 2021, Attorney Pertaglia withdrew as counsel for Coleman.

He testified that this case is relatively simple as related to other, more complex litigation he has successfully handled.

Attorney Statman testified that if appointed class counsel, he would oversee the litigation with the assistance of the Deters Law Firm, including its three attorneys, two outside contractors, and its full support staff in combination with an associate and two senior members at his law firm. Attorney Statman testified that he would rely on Deters Law Firm to finance the litigation and assist in the substantive aspects of the case. He explained: "So I think between the Deters [Law Firm's] resources, my firm, and the Deters [Law Firm's] bank account, we're in good shape to get this case through its finish line."

When asked to explain his relationship with Deters Law Firm, Attorney Statman stated that while he is not a member of Deters Law Firm or one of its full-time employees, he has an "of counsel" arrangement with the firm to work on certain cases as requested. He explained that his fee for that work is covered by an agreement he has with Deters Law Firm. Attorney Statman testified that he did not have an individual agreement with Coleman because he had not yet been appointed class counsel. At this point, any agreement would be between

Coleman and Deters Law Firm.[10]  Attorney Statman testified that his of counsel agreement places the burden of financing any litigation on Deters Law Firm.

Attorney Statman additionally testified that he first met Coleman at the courthouse that day, shortly before the class certification hearing, and spent about twenty minutes talking to her.  He had no specific recollection of speaking with Coleman prior to the November 5, 2020, hearing, but noted he could possibly have spoken to her on the telephone at some point over the years.  Lastly, Attorney Statman testified that he understood the legal and factual issues in this litigation and would easily be able to handle the case from a substantive standpoint.

Lisa Coleman, the named class representative, was the next witness to testify.  Coleman explained that her claim against St. Elizabeth arose out of the bill she received for her 2012 Office Visit.  She asserted that she did not believe that St. Elizabeth should have "double billed" her for a preventative exam and an office visit when the care she received from Dr. Jennings occurred as part of an uninterrupted, single appointment, and does not recall being advised by Dr. Jennings that she would be so billed.

---

[10] Attorney Statman testified that he had consulted with outside ethics counsel, George Johnson, who advised him it was not necessary to have sperate agreements with the clients he assisted in his of counsel capacity, and that he could rely on the contract those clients had with the Deters Law Firm.

Regarding serving as the class representative, Coleman explained that she understood that the purpose of bringing her claim as part of a class action was to protect her and other patients "from what was done – you know, what I feel was done wrong." She testified that she believes the class, if certified, would consist of approximately 700 members who received bills similar to hers, and she "would be their voice." She explained that in this role she understood her responsibility to be "just to come forward and – with the advice of counsel and do what was asked, make appearances." She indicated that she would supply whatever information was needed and make herself available for court appearances and depositions as requested.

Cross-examination of Coleman focused largely on her involvement (or lack thereof) with the litigation to date. While Coleman testified that she had read the original complaint, she did so only after it had been filed; she could not recall whether she had read either the first or second amended complaints filed on her behalf. She denied having any fee agreement with the Deters Law Firm. She further testified that other than Eric Deters, she did not know any of the other attorneys who had represented her since 2012. She testified that she met Attorney Statman that day shortly before the hearing, but had reviewed his resume at some point prior. She felt that based on that review and her meeting that Attorney Statman was competent to serve as class counsel. She testified that if appointed

class representative she would protect the interests of the other class members by making sure that she "was involved and educated." She further testified that she understood that as class representative she would owe a fiduciary duty to the other class members which she explained was a duty "to make sure everybody gets a fair share." She affirmed that she had and would continue to rely on counsel to investigate and prosecute her case. After cross-examination, Coleman requested permission to be excused from the remainder of the hearing, which the circuit court granted.

Dr. Jennings was called by St. Elizabeth to testify next. Dr. Jennings testified that the bill Coleman received accurately and correctly reflected the care and services she received during her Office Visit. As related to the additional charges, Dr. Jennings explained that treating Coleman's anxiety/depression and thyroid issues was outside the realm of the wellness examination, and required him to spend approximately twenty-five additional minutes with Coleman. Dr. Jennings further testified that while St. Elizabeth did not have a mandatory notice requirement, it is his standard practice to orally inform his patients of St. Elizabeth's billing practices whenever a patient brings up matters outside the scope of a wellness examination, and that he does so ninety-nine percent of the time. Dr. Jennings has no specific recollection of whether he followed his standard practice during Coleman's Office Visit, but believes he would have likely done so. Dr.

Jennings was unaware whether other St. Elizabeth physicians followed this same practice.

St. Elizabeth's vice president of revenue and cycle services, Maria Rankin, testified by deposition about St. Elizabeth's billing and coding practices. Rankin testified that the charges reflected on Coleman's statement accurately detailed the service she received, and that like other patients Coleman was billed in accordance with the Current Procedural Terminology ("CPT") billing codes published by the American Medical Association.[11] She further testified that as of June 26, 2012, St. Elizabeth did not have a disclosure policy regarding its billing practices; it was up to the individual physicians whether to the inform the patients of billing matters prior to dispensing treatment.

Following the hearing and submission of post-hearing briefs and other documentary evidence, the circuit court entered an order certifying a class and

---

[11] "Starting in the 1960s, shortly after Congress created Medicare, the need for a uniform system of medical billing became apparent. In response to this growing need, the American Medical Association ("AMA"), with industry input, developed the first version of the Current Procedural Terminology ("CPT") Codes." *United States ex rel. Montcrieff v. Peripheral Vascular Associates, P.A.*, 507 F. Supp. 3d 734, 742 (W.D. Tex. 2020). "The CPT Codes are a series of alphanumeric sequences used by healthcare providers to describe the procedures and services that they perform." *Id.* "In 1996, Congress passed the Health Insurance Portability and Accountability Act, which required the U.S. Department of Health and Human Services ("HHS") to adopt uniform standards of coding for electronic transactions involving healthcare information. HHS adopted as one of the standards of coding the AMA's CPT Codes, which had undergone significant revision and updating. In 2002, the CPT Codes formally became one of the methods by which healthcare providers must bill Medicare for medical services[.]" *Id.* (citations omitted); 45 Code of Federal Regulations ("C.F.R.") § 162.1002.

-13-

appointing Attorney Statman as class counsel.  As certified by the circuit court, the

class includes:

> All current and former patients of [St. Elizabeth] who
> went to [St. Elizabeth] for a preventative care exam and
> were subsequently charged both a preventative care visit
> fee and an additional office visit fee for same-day service
> and who incurred a debt for or paid out-of-pocket for the
> additional fee.

7/6/2021 class cert. order at 12.  St. Elizabeth filed this interlocutory appeal of the

circuit court's certification order pursuant to CR 23.06.

## II. STANDARD OF REVIEW

We review the circuit court's determination as to class certification for

abuse of discretion.  *Hensley v. Haynes Trucking LLC*, 549 S.W.3d 430, 444 (Ky.

2018).  "The test for abuse of discretion is whether the trial judge's decision was

arbitrary, unreasonable, unfair, or unsupported by sound legal principles."

*Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).  While the test for

abuse of discretion is easily stated, the definition is amorphous and applying the

test in practice is exceedingly difficult.  It requires appellate courts to walk a fine

line by engaging "in a meaningful review without resorting to retrying the issue[.]"

*Miller v. Eldridge*, 146 S.W.3d 909, 917 (Ky. 2004).

While we must accord respectful deference to the circuit court's

discretionary decisions, we must be careful not simply to rubber stamp them.  This

is especially important in the class action setting because we are dealing not only

-14-

with the rights of the named representative but also the rights of the absent class members who the named representative seeks to represent.  With this standard in mind, we now turn to the class certification order at issue in this appeal.

### III. ANALYSIS

The class action device is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S. Ct. 2541, 2550, 180 L. Ed. 2d 374 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S. Ct. 2545, 2557, 61 L. Ed. 2d 176 (1979)); *Imhoff v. House*, 628 S.W.3d 88, 93 (Ky. 2021).  Class actions in Kentucky are governed by CR 23.01 through CR 23.08.  "Taken together, the rules provide a comprehensive roadmap to class certification." *Manning v. Liberty Tire Services of Ohio, LLC*, 577 S.W.3d 102, 110 (Ky. App. 2019).

As related to this appeal, we are primarily concerned with the circuit court's determinations under CR 23.01 and CR 23.02.  As explained in *United Propane Gas, Inc. v. Purcell*, 533 S.W.3d 199 (Ky. App. 2017):

> When read in concert, CR 23.01 and CR 23.02 create a two-step analysis for the circuit court to undertake when determining if certification of a class is appropriate. First, the circuit court must determine if all four of the requirements set out in CR 23.01 – numerosity, commonality, typicality, and adequacy of representation – are present. *Pyro Mining Co. v. Kentucky Comm'n on Human Rights*, 678 S.W.2d 393, 395 (Ky. 1984).  If they

are not, the circuit court cannot certify the class. If all four are present, the circuit court looks to CR 23.02 and determines if one of the three conditions listed therein is present. If none of the three is satisfied, the court must deny class certification; . . .

If all the requirements are met for class certification, the circuit court "must determine by order whether to certify the action as a class action." CR 23.03. In that order, the circuit court "must define the class and the class claims, issues, or defenses, and must appoint class counsel under CR 23.07." CR 23.03(2).

*Id.* at 202-03.

Coleman sued St. Elizabeth seeking to represent a class of similarly situated individuals. As such, "at an early practicable time" the circuit court was required to "determine by order whether to certify the action as a class action." CR 23.03. While this is typically done after the named representative moves for class certification, there is no requirement in the Civil Rules which requires the named representative to move for certification. *See Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 655 n.1 (D. Nev. 2009) ("[A]lthough the plaintiff typically moves for class certification, the parties do not dispute that a defendant can move to deny class certification before a plaintiff moves for certification. Rule 23 does not preclude this.").

Even when, as here, the class certification issue is raised by the defendant, if sufficient discovery has taken place, the court should conduct the certification proceeding as if it were before the court as part of a "regular, plaintiff-

-16-

initiated class certification motion."  WILLIAM B. RUBENSTEIN, NEWBERG ON

CLASS ACTIONS § 7:22 *Movant's burden of proof – Defendant's burden of proof on*

*a motion to deny class action* (5th ed. 2021).  Most importantly, no matter which

party triggers the certification decision, the burden of demonstrating compliance

with the requirements of CR 23.01 and CR 23.02 remains with the plaintiff.

*Dukes*, 564 U.S. 338 at 350, 131 S. Ct. at 2551 ("A party seeking class certification

must affirmatively demonstrate [her] compliance with the Rule – that is, [s]he must

be prepared to prove that there are in fact sufficiently numerous parties, common

questions of law or fact, etc.").

On remand, as instructed by this Court, the circuit court reassessed

each of the CR 23.01 requirements, and concluded that the putative class as alleged

in Coleman's second amended complaint satisfied each.[12]  With respect to CR

23.01, St. Elizabeth contests only the circuit court's conclusion that Coleman, as

represented by Attorney Statman, can adequately and fairly protect the class's

interests.

---

[12] CR 23.01 states:  "Subject to the provisions of Rule 23.02, one or more members of a class may sue or be sued as representative parties on behalf of all only if (a) the class is so numerous that joinder of all members is impracticable, (b) there are questions of law or fact common to the class, (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (d) the representative parties will fairly and adequately protect the interests of the class."

Adequacy in class action litigation refers to the idea that the class representative will fairly and adequately protect the class's interests. "The adequacy prong has two separate criteria: '1) the representative must have common interests with unnamed members of the class[;] and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Nebraska Alliance*, 529 S.W.3d at 313 (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). "Adequate representation is [] the capstone of the Rule 23(a) requirements: it ensures that the class's champion will pursue its interests sufficiently well so as to produce a judgment that can fairly bind all members of a group who cannot appear before the court individually." NEWBERG ON CLASS ACTIONS § 3:50 *Introduction to Rule 23(a)(4) – Adequacy of representation* (5th ed. 2021).

With respect to the first prong of the adequacy analysis, we are mainly concerned with determining whether "there is any antagonism between the interests of the [representative] and other members of the class [she] seek[s] to represent." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).[13] Antagonism commonly arises in cases where the named class

---

[13] To date, our appellate courts have not elaborated with any degree of specificity regarding the factors a trial court should consider in assessing the ability of the proposed class representative to vigorously prosecute the interests of the class. Given the similarity between CR 23 and its federal counterpart and in the absence of controlling Kentucky precedent, we look to federal cases for guidance. *Nebraska Alliance*, 529 S.W.3d at 311; *Curtis Green & Clay Green, Inc. v. Clark*, 318 S.W.3d 98, 105 (Ky. App. 2010) ("It is well established that Kentucky courts rely

-18-

representative seeks to represent a class composed of individuals who may have an interest in pursuing different types of relief such as prospective versus retrospective relief.

The second prong of the adequacy analysis, which is the focus of this appeal, requires the court to determine whether the proposed representative is properly qualified to assume the role of class representative and whether she will vigorously prosecute the interests of the class if named the class representative. This analysis entails considerations such as the proposed representative's knowledge of the case, her interest in and enthusiasm for the litigation and for representing the class, her willingness to respond to interrogatories and depositions, her understanding of the role and duties of a class representative and ability to carry out those duties, and the relationship between the representative and class counsel. *See* NEWBERG ON CLASS ACTIONS § 3:54 *Introduction to adequacy standard* (5th ed. 2021).

St. Elizabeth argues the circuit court's abuse of discretion in finding Coleman to be an adequate representative is evinced by (1) Coleman's lack of a written fee agreement with any attorney or law firm; (2) her lack of knowledge regarding the legal basis of her claims; (3) her uncertainty regarding who was

---

upon Federal caselaw when interpreting a Kentucky rule of procedure that is similar to its federal counterpart.").

-19-

representing her at various points in the litigation; and (4) her lack of overall involvement in the litigation to date, including allowing the case to languish for several years.

We cannot agree with St. Elizabeth that Coleman's alleged lack of a fee agreement with the Deters Law Firm is a basis for finding her to be an inadequate representative.[14] St. Elizabeth's argument in this regard confuses the role of individual counsel and class counsel. Even if a fee agreement did exist, it would not govern Coleman's relationship with class counsel nor bind the absent class members. "[R]egardless of whether the class representative was initially an individual client of class counsel, once a court certifies a class and appoints class representatives and class counsel, those parties have an attorney-client relationship with one another." NEWBERG ON CLASS ACTIONS § 19:2 *Attorney-client*

---

[14] In her appellee brief, Coleman now asserts that she misspoke at the certification hearing and that she does in fact have an agreement with the Deters Law Firm. Her brief states: "The written fee agreement was executed on October 6, 2012, and Deters Law's records show that the matter was in connection with a St. Elizabeth billing issue and that Coleman was a new client." Of course, Coleman should be well aware that we are limited to the record below and that the argument of counsel is not evidence. *See White v. White*, 883 S.W.2d 502, 505 (Ky. App. 1994) ("The insertion of the promissory note in the hospital's brief at this stage of the proceedings is an improper attempt to introduce evidence outside the record. Since our review is limited to the pleadings and evidence considered by the circuit court, we decline to consider the promissory note in reaching our decision, although to do so would not change the result."); *Deal v. First and Farmers National Bank, Inc.*, 518 S.W.3d 159, 173, n.14 (Ky. App. 2017) ("The arguments of counsel in briefs are not evidence."). Additionally, if such a fee agreement does in fact exist, we are at a complete loss to understand why Coleman did not seek to correct the record while the case was still pending before the circuit court. Coleman testified on November 5, 2020. There were numerous opportunities for Coleman to file the alleged fee agreement in the circuit court before the circuit court rendered its certification decision in July of 2021. Yet, she waited until this matter was on appeal to claim the existence of the agreement.

*relationships in class actions* (5th ed. 2021). After certification, the relationship and class counsel's fees are largely governed by CR 23, and not any individual fee agreement the named representative may have had prior to certification.

We also cannot agree that Coleman's lack of knowledge regarding the exact legal theory behind her claims is indicative of the fact that she is not an adequate class representative. Courts are mostly concerned that the class representative has an adequate factual understanding of the case; the class representative does not need to understand the legal theories of the case and is entitled to rely on counsel's expertise and advise. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370, 86 S. Ct. 845, 850, 15 L. Ed. 2d 807 (1966). While Coleman may not have been able to articulate the precise legal theory underpinning her claim, she demonstrated an acute awareness of the underlying facts.

St. Elizabeth's final arguments center on Coleman's lack of involvement in the case as demonstrated by her inability to identify the various lawyers who have represented her and her general passivity as related to this litigation. It points out that Coleman was so uninvolved in the case that it languished for several years prior to any decision on certification. The circuit court excused Coleman's lack of diligence by attributing the delays in this case to events which occurred at Deters Law Firm and the courthouse "which were not within Coleman's control." In so doing, the circuit court failed to consider how

Coleman's response to the delays indicates her ability (or lack thereof) to protect the interests of the absent class members in the future.

A court must consider the willingness and ability of the class representative to be actively involved with the litigation; a class representative should not be simply "lending" her name as the representative. While the events themselves may not have been within Coleman's control, we cannot accept that this excuses the fact that between May of 2013 and August of 2018, nothing was accomplished in this case. It languished needlessly. A simple phone call or motion seeking a status conference could have prevented years of needless delay by alerting court staff to the missing file. Even after the court issued a show cause order, Coleman's response was limited to three short sentences noting that there were pending motions. She did not identify the pending motions by name, request a status conference, or even call to the court's attention that this was a putative class action.

Coleman failed to offer any explanation whatsoever for her past dilatory conduct during her testimony. From the record, it is unclear whether Coleman sought any case updates from counsel during this time or whether she had simply forgotten about the case altogether. If she did inquire and those inquiries went unanswered, it would have been prudent for her to search for different counsel; if she did not inquire, one must question why she was so unconcerned

with the action. Obviously, as a layperson, Coleman must rely on the legal advice of counsel. However, this does not absolve her from staying updated on the litigation and ensuring that counsel are diligently pursuing the class claims.

Coleman testified that going forward she would do what was asked of her by counsel. Certainly, this is important. Perhaps, more important, especially in light of past delays such as occurred in this case, is the class representative's ability and willingness to oversee class counsel. Nothing in this record supports that Coleman has the willingness or the ability to prevent future similar delays as have occurred in this case. In fact, the record suggests precisely the opposite.

"[T]he failure of the representative to move for class certification in a timely fashion or otherwise to prosecute the action is a clear indication that the named party is not an adequate representative." MARY KAY KANE, 7A FED. PRAC. & PROC. CIV. § 1766 *The Representatives Will Protect the Interests of the Class – Quality Not Quantity Is Significant* (4th ed. 2022); *East Texas Motor Freight System Inc. v. Rodriguez*, 431 U.S. 395, 405, 97 S. Ct. 1891, 1897, 52 L. Ed. 2d 453 (1977) ("[T]he named plaintiffs' failure to protect the interests of class members by moving for certification surely bears strongly on the adequacy of the representation that those class members might expect to receive."). Coleman did nothing for almost five years to advance this case beyond the pleading stage. While she may not be responsible for creating the reasons for the initial delay, her

lack of attention to and involvement in this case undisputedly prolonged it by several years.

Allowing this case to proceed with Coleman as the named class representative would risk the rights of the unnamed class members whom she would represent. They would be at the mercy of Coleman and her counsel, who, to date, have demonstrated either an unwillingness or an inability to move this case along.[15] In light of these most unusual facts, we must conclude that the circuit court abused its discretion when it found that Coleman is able to vigorously prosecute the interests of the class as the named the class representative. *See Nagel v. ADM Inv'r Services, Inc.*, 217 F.3d 436, 443 (7th Cir. 2000) (affirming district court's *sua sponte* dismissal of class claims where "the case had been pending for several years when the court ruled, and the plaintiffs had never during that period moved for class certification, even though Rule 23 of the Federal Rules of Civil Procedure and the cases interpreting it require that the issue of class certification be resolved as quickly after the suit is filed as practicable."); *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 704 (7th Cir. 1993) (holding that delay in moving for class certification showed that named representative was not adequate because it

---

[15] Attorney Statman testified that, if appointed class counsel, he would rely fully on the Deters Law Firm to finance the litigation and partially rely on the Deters Law Firm's staff, including its attorneys, paralegals, consultants, and support staff to assist him with the litigation. These are the same attorneys, paralegals, and support staff who were complicit in the extraordinary delay that plagued this case from 2013 to 2018.

demonstrated that she was unable to "timely protect the interests of the class members").

Having concluded that Coleman fails CR 23.01's adequacy prong, we need not consider her additional argument under CR 23.02(c).

## IV. CONCLUSION

For the reasons set forth above, we reverse the Kenton's Circuit Court's July 6, 2021, order on class certification.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David V. Kramer
Mark D. Guilfoyle
Christopher B. Markus
Crestview Hills, Kentucky

BRIEF FOR APPELLEE:

Alan J. Statman
Cincinnati, Ohio

A. Dominick Romeo
Independence, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Christopher B. Markus
Crestview Hills, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Alan J. Statman
Cincinnati, Ohio